IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**CYNTHIA S. GUY**                                                                                         **PLAINTIFF**

v.                                                                     **CIVIL ACTION # 2:08cv28-KS-RHW**

**QUALITY HEALTH SERVICES, INC.;
QUALITY HOSPICE OF THE GULF COAST, INC.;
COMPLETE BENEFIT SOLUTIONS, INC.;
HUGHES AND ASSOCIATES, INC.;** and
**AMERICAN FAMILY LIFE ASSURANCE COMPANY
OF COLUMBUS ("AFLAC")**                                                                     **DEFENDANTS**

MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion to compel arbitration [Doc. # 5] filed by the Defendant American Family Life Assurance Company of Columbus.  Because the Court finds that there is valid agreement to arbitrate between parties and that the dispute in question falls within the scope of that arbitration agreement, the motion to compel arbitration should be **granted**.

I.  FACTUAL BACKGROUND

This case arises out of an insurer's duty to pay claims under an insurance policy.  When the Plaintiff made a claim under her short-term disability policy purchased from the Defendant, the Plaintiff alleges that her insurer wrongfully denied her benefits.  Now that she has brought suit against the company, her insurer seeks to compel the Plaintiff's case to arbitration based on a provision of her policy contract.

Cynthia S. Guy suffered an unexpected illness just before Christmas in 2006.  She was hospitalized for surgery and treatment several times from December 20, 2006 through March,

1

2007.  Guy was hospitalized for several consecutive weeks to receive treatments, causing her to miss significant amounts of time from work.

Prior to her illness, Guy had purchased a short term disability policy, # PH418902, from American Family Life Assurance Company of Columbus ("AFLAC").  The policy contract between Guy and AFLAC included an arbitration agreement, as well as a notice and acknowledgment of the same arbitration agreement.  *See* Def.'s Mot. to Dismiss at 51-52, 64-65 [Doc. #5] (Feb. 5, 2008).  In conspicuous type and wording, the provision stated that policyholders must submit any "claims, disputes, or lawsuits" against AFLAC based on their policy agreements to binding arbitration.  *Id*. at 64.  The accompanying notice for the arbitration agreement conspicuously stated that "when you accept this insurance policy you agree to resolve any dispute related to the policy by binding arbitration instead of a trial in court, including a trial by jury." *Id*. at 51.

Guy alleges several irregularities surrounding the execution of her policy agreements with AFLAC make the arbitration agreement unenforceable.  She claims that instead of signing the contract in an office environment, her AFLAC agent arranged a meeting to sign the documents in a gas station parking lot, with the ceremony taking place in the rear of his vehicle on a malfunctioning laptop computer.  After being told that the policy was "self-explanatory" and contained "everything that was covered in [a prior] meeting," Guy alleges she was instructed by her agent to sign an electronic pad a single time to execute the agreement.  *See* Pl.'s Res. Br. at 2 [Doc. # 13] (Mar. 6, 2008).  Guy claims that she was not shown an electronic reproduction of the policy on the agent's laptop, nor was she provided any paper copies of the documents prior to her signing.  She alleges that AFLAC fraudulently "superimposed [her signature] multiple times on three

2

separate policies" and "falsely [recorded] a different time stamp" for each. *See* Pl.'s Res. Br. at 2 [Doc. # 13] (Mar. 6, 2008).[1]

In her lawsuit, Guy brings claims against her employer and her insurers based on their response to her illness. Relevant to this motion, she claims that AFLAC exercised bad faith in failing to pay claims due under a short term disability policy she purchased prior to her illness. She also asks for an accounting from each of her insurers that paid or denied claims based on her illness.

AFLAC now moves this Court to compel Guy to submit her dispute against them to arbitration. In response, Guy claims that the arbitration agreement she signed is both procedurally and substantively unconscionable, that she was fraudulently induced into signing the arbitration agreement, and that her claims are nonetheless outside the arbitration agreement's scope. For the reasons stated herein, the Court finds these arguments insufficient to prevent Guy from being compelled to arbitrate her dispute against AFLAC.

## II. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") was enacted to overcome judicial resistance to arbitration by establishing a national policy in favor of arbitration and placing arbitration agreements on the same footing as other contracts. *Buckeye Check Cashing, Inc., v. Cardegna*, 546 U.S. 440, 445 (2006). The pro-arbitration policy leads the courts to resolve doubts in favor of arbitration. *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). The impulse is so

---

[1] Guy's claim that her signature was superimposed without her knowledge or permission is contested by the affidavits of James Dodd and Lester Dean and submitted by the Defendant AFLAC. *See* Def.'s Supp. Mot. [Doc. #19-2] [Doc. # 19-3] (Mar. 20, 2008).

strong that arbitration should not be denied "unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Personal Security and Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002).

In considering whether arbitration should be compelled under the FAA, courts conduct a two-step process. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). First, the court first determines whether the parties agreed to arbitrate their dispute. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). That question depends on whether: (1) there is valid agreement to arbitrate between parties; and (2) the dispute in question falls within the scope of that arbitration agreement. *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 293-94 (5th Cir. 2005).[2] If both prongs are met, then the court will compel the dispute to arbitration so long as there is no "federal statute or policy [that] renders the claims non-arbitrable." *R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992).

### III. APPLICATION AND ANALYSIS

**1.  Is there an agreement to arbitrate?**

Both Guy and AFLAC agree that the policy contract signed by Guy included an arbitration agreement.[3] Yet Guy claims that the agreement cannot be enforced because it is unconscionable

---

[2]  The determination of whether there is a valid agreement to arbitrate "is generally made on the basis of ordinary state-law principles that govern the formation of contracts" to which the "federal policy favoring arbitration does not apply." *See Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008) (citations omitted). Yet when considering whether the dispute itself falls within the scope of the recognized arbitration agreement, the "ambiguities are resolved in favor of arbitration." *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (citations omitted).

[3] Although Guy disputes the manner in which her signature was electronically imported into the document, she has not disputed that she purposefully signed the electronic keypad with the

4

and because she was fraudulently induced into signing the documents.  Although she raises claims to dispute the existence of the arbitration agreement, those issues relate to the entire policy contract with AFLAC, and are not limited to just the agreement to arbitrate.  Because her defenses are not strictly limited to the arbitration clause, the arbitrator is the proper party to address them, and this Court finds that an agreement to arbitrate between the parties exists.

Guy attacks the validity and "conscionability" of the arbitration agreement on both procedural and substantive grounds.  She claims the agreement is procedurally unconscionable because the signing ceremony orchestrated by her AFLAC agent gave her no opportunity to review the policy contracts before signing them.  She claims that AFLAC presented her with a contract of adhesion, and that she lacked "the necessary notice, discussion, and/or negotiation" of the terms of the arbitration agreement. *See* Pl.'s Res. Br. at 7 [Doc. # 13] (Mar. 6, 2008).

Although Guy raises a viable claim that her contract was procedurally unconscionable, her argument is not limited to the arbitration agreement alone.  The arbitration agreement itself was a single and conspicuous part of Guy's entire contract with AFLAC.  So when Guy allegess that the signing ceremony was procedurally unconscionable, she cannot distinguish between the signing of the arbitration provision and the signing of the underlying contract.  As such, her claim that the agreement was procedurally unconscionable is an attack on her entire contract with AFLAC, and not simply that contract's arbitration provision. *See R.M. Perez & Assoc., Inc. v. Welch*, 960 F. 2d 534, 538 (5th Cir.1992).  Because her claims of unconscionability attack the formation of the entire contract, they belong before the arbitrator and not before this court. *See Rojas v. TK*

---

intention of entering into this agreement with AFLAC.  But as discussed *infra*, she argues that she was unaware of the arbitration provision and that it remains substantively and procedurally unconscionable.

*Communications, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996).[4] The Mississippi courts have also adopted the Fifth Circuit's position that attacks on the agreement as a whole should be referred to the arbitrator. *See Russell v. Performance Toyota, Inc*., 826 So. 2d 719, 726 (Miss. 2002).

In addition to claiming that the agreement was procedurally unconscionable, Guy alleges that she was fraudulent induced into agreeing to the arbitration provision. She cites to *American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533 (5th Cir. 2003) for the proposition that this Court should decide her claim of fraudulent inducement. In *Lang*, a plaintiff claimed to have been fraudulently induced into signing four stand-alone arbitration agreements. *Id.* at 535. The Fifth Circuit held that, because "the claim of fraud in the inducement is limited to the arbitration agreements themselves" then the claim "is not arbitrable because it goes to the making of the arbitration agreement." *Id.* at 539.

Unlike the plaintiff in *Lang*, Guy's claims of fraud in the inducement again relate to the entire contract containing the arbitration provision, and not simply the arbitration clause itself. *Bloxom v. Landmark Pub. Corp.*, 184 F. Supp. 2d 578, 583 (E.D. Tex. 2002). She cannot assert that she was fraudulently induced into signing the arbitration clause without simultaneously asserting that she was fraudulently induced into signing the entire agreement with AFLAC. Since her claims are not limited to the making of the arbitration agreement itself, they do not prevent this Court from finding an agreement to arbitrate disputes existed between Guy and AFLAC. *See Bhatia v. Johnson*, 818 F.2d 418, 422 (5th Cir. 1987).

Finally, Guy asserts that the arbitration agreement is substantively unconscionable because of a "lack of mutuality of obligation between the parties." *See* Pl.'s Res. Br. at 9 [Doc. # 13]

---

[4] *See also Shaw v. Walsh Services, Inc*., 1997 WL 30907 at *1 (N.D. Tex. Jan. 22, 1997).

(March 6, 2008). She argues that the arbitration clause requires her to submit all claims "that I have" against AFLAC to arbitration, but that AFLAC retains the freedom to choose any tribunal it wishes in disputes it has against its policyholder. *Id*. She cites to two cases from the Arkansas Supreme Court, rejecting a substantively unconscionable contracts of adhesion with arbitration provisions that restricted the forum choice of the individual, yet retained unrestricted the forum choice of the corporation. *See E-Z Cash Advance, Inc. v. Harris*, 60 S.W.3d 436, 442 (Ark. 2001).

Yet a closer reading of the contract reveals that AFLAC is also bound to arbitrate disputes it has against its policyholders. The arbitration agreement specifically says that "both I and AFLAC agree and understand that "all disputes...will be decided by the use of binding arbitrators." *See* Def.'s Mot. to Dismiss at 64 [Doc. #5] (Feb. 5, 2008). Moreover, AFLAC has stipulated in the instant case that they are bound by the same clause to arbitrate their disputes just like their policyholder. *See* Def. Reb. Br. at 17 [Doc. # 17] (Mar. 19, 2008). Therefore, there exists mutuality of obligation between AFLAC and their policyholder Guy, and hence Guy's claim that the arbitration provision is substantively unconscionable is unfounded.[5]

**2. Are the claims arbitrable?**

The claims raised by Guy in her Complaint easily fit within the category of claims subject to the arbitration agreement. Guy asserts that AFLAC acted in bad faith when it refused to pay benefits owed to her under the policy. As the arbitration agreement encompasses "any and all claims, disputes, or lawsuits that I have concerning my AFLAC policy," Guy's claim that AFLAC

---

[5] The Court does not address the issue of whether an arbitration provision that only required one party to submit its disputes to arbitration would be substantively unconscionable.

wrongfully denied her benefits under that policy is included. *See* Def.'s Mot. to Dismiss at 64 [Doc. #5] (Feb. 5, 2008).

Although her principal claim is clearly within the scope of the arbitration provision, Guy argues in her response that her additional request for an accounting is outside the terms of the arbitration agreement as a matter of law. She bases her argument *University Nursing Associates, PLLC v. Phillips*, 842 So. 2d 1270, 1280 (Miss. 2003), which held that "performance of an accounting is not subject to arbitration" because it "does not involve any dispute." *Id.* Guy further alleges that because she has requested an accounting, the entirety of her claims against AFLAC cannot be compelled to an arbitrator.

Although the citation from *Phillips* is accurate, that case is inapplicable to the case at hand. The broad wording of the arbitration agreement signed by Guy combined with the federal policy in favor of arbitration convince the Court that Guy's accounting claim should be sent to arbitration along with her substantive claims against AFLAC. The Supreme Court has stated that any "ambiguities as to the scope of the arbitration clause itself must be resolved in favor or arbitration." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Because this court cannot say "with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue," the issue of an accounting should be sent to arbitration as well. *Personal Security and Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002).[6] Were a party able to so easily raise the issue of an accounting to avoid arbitration, it would inevitably lead to the careful repackaging of substantive claims by

---

[6] In at least one case, the Fifth Circuit has held that an accounting was a "controversy" within the meaning of an arbitration clause. *See Parry v. Bache*, 125 F.2d 493, 495 (5th Cir. 1942).

wrapping them in the request for an accounting for the sole purpose of thwarting arbitration agreements.[7]

## IV. CONCLUSION

Applying the standard applicable for a motion to compel arbitration, this Court finds that there existed an agreement to arbitrate between the parties, and that the claims asserted by the Plaintiff fall within the scope of that agreement. The arbitration clause itself bound both parties to settle their disputes before an arbitrator, and hence was not procedurally unconscionable. Although the Plaintiff has raised numerous issues surrounding the execution of that agreement, because they touch on the formation of the underlying contract itself, this Court must defer those decisions to the arbitrator.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion to compel arbitration [Doc. # 5] is **granted**.

SO ORDERED AND ADJUDGED on this, the 3rd day of April, 2008.
*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

---

[7] *See* Pl.'s Res. Br. at 12 [Doc. # 13] (Mar. 6, 2008) ("The arbitrator would have no authority to settle the claims raised by Cynthia, and thus, her causes must be submitted for judicial review before this Court.").